UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER A. STANTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-666-JD-MGG |
| ARAMARK, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher A. Stanton, a prisoner without a lawyer, filed an amended complaint (ECF 10) naming eleven defendants and alleging that he is not receiving a proper diabetic diet while housed at the Westville Correctional Facility. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Still, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against an immune defendant.

Stanton suffers from diabetes and was prescribed an 1800 calorie diabetic diet. In January of 2020, while consuming the prescribed diet, his A1C was 6.3.[1] On March 6,

---

[1] An A1C test "measures your average blood glucose, or blood sugar, level over the past 3 months." A1C tests are used both to diagnose diabetes and to see how well the condition is being managed. An A1C below 5.7 percent is considered normal. https://medlineplus.gov/a1c.html (last visited Feb. 16, 2021).

2020, he was placed in segregation. While there, he began receiving regular food trays rather than diabetic food trays. These trays included many simple carbohydrates - white rice, pasta, bread, and a soy byproduct. By May of 2020, his A1C had climbed to 9.7, and his blood sugar readings were sometimes as high as 500. He also asserts that the soy byproduct caused a large "knot" in his abdomen, stomach pain, constipation, weakness, poor circulation, and numbness.[2] His weight dropped from 212 in 2018 to 151 at the time he filed his complaint. He seeks monetary damages and injunctive relief in the form of a diet that is low in simple carbohydrates, free of soy, and contains real meat.

To establish an Eighth Amendment claim for constitutionally inadequate medical care, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the

---

[2] Stanton asserts that soy causes cancer, diabetes, heart disease, pancreatic disorders, and low testosterone and sperm count in males. However, with the exception of diabetes, which he does not claim was caused by consuming soy, he does not indicate that he suffers from any of these conditions.

person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Stanton sued Dorothy Livers because, when he complained to her about his diet, she told him that he would need to address his concern with his provider or Aramark. This comment does not demonstrate deliberate indifference, and he will not be granted leave to proceed against her.

Stanton sued Drs. Liaw and Jackson because they each told Stanton that he is on the proper diet. It is unclear when he spoke with Drs. Liaw and Jackson, or what diet they believed he was receiving at that time. Simply telling Stanton that he was on the proper diet does not demonstrate deliberate indifference.

Stanton also claims that Dr. Liaw changed his diet from the diabetic diet to the regular diet. Giving Stanton the inferences that he is entitled to at this stage of the case, this allegation states a claim. However, he raises the same allegation regarding Nurse Smith, but it cannot be plausibly inferred that she did anything more than implement Dr. Liaw's order. It is not for her to reexamine the patient and medical records and reach an independent conclusion. Thus, Nurse Smith will be dismissed.

Stanton sued Jason English because he is the Aramark supervisor and oversees what is being served. Similarly, he sued Captain G. Lewis and Warden John Galipeau because he told them about this problem, and they did nothing to fix it. And, he sued Commissioner Carter because he allows his staff to "do as they please." ECF 10 at 4. "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. Thus, he cannot proceed on a claim for monetary damages against Jason

3

English, Captain G. Lewis, Warden Galipeau, or Commissioner Carter. However, he will be permitted to proceed against Warden Galipeau in his official capacity to receive a medically appropriate diet, as required by the Eighth Amendment. See *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

Stanton sued John R. Harvill because he is unhappy with how his grievance was handled. But, Mr. Sample has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure).

Stanton speculates that that Wexford and Aramark know that soy is unhealthy. He further speculates that each of the defendants is motivated to act in a manner that saves Aramark money because, if they do, they receive kickbacks. However, he has not alleged facts from which it can be plausibly inferred that Wexford and Aramark know soy is unhealthy or that the defendants have placed him on a diet containing soy in hopes of receiving kickbacks for saving Aramark money. A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to

4

relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). Therefore, these allegations do not state a claim.

Furthermore, to the extent that Stanton's argument that he should not receive soy is based on the idea that a diet containing soy is inherently dangerous, he cannot prevail. Although "the safety of soy is a topic of current debate and study and has been for some time[, t]hat is not enough to find an Eighth Amendment violation." *Harris v. Brown*, 3:07-CV-3225, 2014 WL 4948229, 2014 U.S. Dist. LEXIS 137870 (C.D. Ill. September 30, 2014) (collecting studies and expert opinions). "An objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (quotation marks and citations omitted). "[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution." *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985) (quotation marks and citation omitted.) Today, foods containing soy are widely consumed and federal

5

regulations permit food labels to advertise the health benefits of consuming food containing soy. *See* 21 C.F.R. § 101.82. As such, there is no consensus that soy poses a health hazard, much less an unreasonable one. Nevertheless, to the extent that soy products pose a health risk, it is a risk voluntarily taken by millions of Americans every day. Thus, like slippery floors, exposing inmates to such risks does not state an Eighth Amendment violation. See *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases) ("[W]hile the standing-water problem was a potentially hazardous condition, slippery floors constitute a daily risk faced by members of the public at large. Federal courts from other circuits have therefore consistently held that slippery prison floors do not violate the Eighth Amendment."). In short, "the alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation." *Riley-El v. Godinez*, No. 13 C 8656, 2015 WL 4572322, at *4 (N.D. Ill. July 27, 2015). See also *Hardy v. Rauner*, No. 17-CV-1354-NJR, 2018 WL 1904288, at *8 (S.D. Ill. Apr. 20, 2018) ("The alleged risks of a soy diet do not rise to the level of a serious harm under the Eighth Amendment.").[3]

Stanton claims he is disabled within the meaning of the Americans with Disabilities Act. He suggests that his claims fall within this act, but he does nothing more to explain. "To establish a violation of Title II of the ADA, the plaintiff must prove

---

[3] Even if a soy-based diet did pose a serious risk of harm, the defendants would be entitled to qualified immunity because it is not clearly established that a soy-based diet is unconstitutional. *See Hardy v. Rauner*, No. 17-CV-1354-NJR, 2018 WL 1904288, at *9 (S.D. Ill. Apr. 20, 2018); *Croom v. Tripp*, No. 17-CV-00631-NJR, 2017 WL 4539285, at *5 (S.D. Ill. Oct. 11, 2017) (dismissing a similar claim both because the allegations did not support an Eighth Amendment claim for unconstitutional conditions of confinement and on qualified immunity grounds).

that he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quotation marks and citation omitted). Stanton does not explain which of the eleven defendants he has named in this complaint violated the ADA or how they violated it. Accordingly, he has not stated a claim under the ADA.

Additionally, to the extent that Stanton's allegations against Wexford are based on the alleged poor decisions that its staff made in connection with his care, he cannot proceed against Wexford. There is no general *respondeat superior* liability under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights.").

Lastly, Stanton asks that the court grant him preliminary injunctive relief in the form of a diet that is low in simple carbohydrates, free of soy, and contains real meat. The local rules require preliminary injunction requests to be filed as a separate motion. N.D. Ind. L.R. 65-1(a). However, because he is proceeding without a lawyer, the court will consider the request. "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). It is unclear if Stanton can meet this burden, but the complaint will be separately docketed as a preliminary injunction and the Warden Galipeau will be ordered to respond to it.

7

For these reasons, the court:

(1) DIRECTS the clerk to separately docket the amended complaint (ECF 10) as a motion for preliminary injunction;

(2) GRANTS Christopher A. Stanton leave to proceed against Warden Galipeau in his official capacity for injunctive relief, to receive a medically appropriate diet, as required by the Eighth Amendment;

(3) GRANTS Christopher A. Stanton leave to proceed against Dr. Liaw in his individual capacity for monetary damages on his claim that he ordered that Stanton receive a regular diet instead of a diabetic diet, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Aramark, Jason English, Dorothy Livers, Captain G. Lewis, John R. Havil, Commissioner Robert E. Carter, Dr. Jackson, Wexford Health of Indiana, and Nurse Smith;

(6) DIRECTS the clerk to request Waiver of Service from Warden Galipeau at the Indiana Department of Correction with a copy of this order and the amended complaint (ECF 10), pursuant to 28 U.S.C. § 1915(d);

(7) DIRECTS the clerk to fax or email the same documents to Warden Galipeau at the Westville Correctional Facility;

(8) DIRECTS the United States Marshals Service to serve process pursuant to 28 U.S.C. § 1915(d) on the Westville Correctional Facility Warden by **March 1, 2021**, if an entry of appearance has not been entered by **February 22, 2021**;

(9) ORDERS Warden Galipeau to respond respond to the preliminary injunction motion and to provide a sworn declaration or affidavit with supporting medical documentation as necessary by **March 8, 2021,** explaining how the dietary needs of Christopher A. Stanton, IDOC # 158436, are being met in a manner that complies with the Eighth Amendment;

(10) DIRECTS the Clerk to request waiver of service from (and if necessary, the United States Marshals Service to serve process on) Dr. Liaw at Wexford of Indiana, LLC with a copy of this order and the amended complaint (ECF 10) pursuant to 28 U.S.C. § 1915(d);

(11) ORDERS Wexford of Indiana, LLC, and the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if they have such information; and

(12) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Warden Galipeau and Dr. Liaw respond to the complaint as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 16, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT