UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER A. STANTON,

        Plaintiff,

        v.                         CAUSE NO. 3:20-CV-666-JD-MGG

JOHN GALIPEAU, et al.,

        Defendants.

<u>OPINION AND ORDER</u>

Christopher A. Stanton, an inmate at Westville Correctional Facility ("Westville") proceeding without a lawyer, seeks preliminary injunctive relief related to his need for a diabetic diet. (ECF 12.) The court ordered a response from the Warden at Westville, which has now been received. (ECF 25.)

As outlined in the screening order, Mr. Stanton alleges he is being given an improper diet that does not meet his needs as a diabetic. (ECF 11.) He was permitted to proceed on an Eighth Amendment claim for money damages against Dr. Andrew Liaw for allegedly taking him off the diabetic diet, as well as on a claim for injunctive relief against the Warden related to his ongoing need for a proper medical diet. (*Id.* at 8.) The court dismissed a number of his other claims, including his demand to be served a diet free of all soy-based products. (*Id.* at 2-7.) At present, he seeks a preliminary injunction requiring medical staff to place him on a "proper diabetic diet" that includes "low simple carbohydrates," "no soy bi-products," and requires him to be served "real meat." (ECF 12 at 8.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted). To obtain a preliminary injunction, the moving party must show: (1) he will suffer irreparable harm before the final resolution of his claims; (2) available remedies at law are inadequate; and (3) he has a likelihood of success on the merits. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). If these elements are satisfied, the court then "weighs the competing harms to the parties if an injunction is granted or denied and also considers the public interest." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). An injunction ordering the defendant to take an affirmative act rather than merely refrain from specific conduct is "cautiously viewed and sparingly issued." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997) (citation omitted). Additionally, in the prison context, the court's ability to grant injunctive relief is significantly circumscribed; any remedial injunctive relief "must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citations and internal quotation marks omitted). The court must also bear in mind that "[p]rison officials have broad administrative and discretionary authority over the institutions they manage." *Id.* at 683 (citation omitted).

Under the Eighth Amendment, inmates are entitled to adequate medical care, although they are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care

possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Mere disagreement with a medical professional does not establish an Eighth Amendment violation. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). Additionally, inmates are entitled to food adequate to meet their dietary needs, but they are not entitled to the food of their choosing, or to "food that is tasty or even appetizing." *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004); *see also Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017).

The Warden argues that Mr. Stanton is receiving an adequate diet and is not entitled to a preliminary injunction. (ECF 25.) The response and attached records reflect that Mr. Stanton suffers from certain chronic conditions, including diabetes and major depression, for which he takes medication.[1] (*See* ECF 25-2 at 1-31.) On June 5, 2020, Dr. Liaw ordered that Mr. Stanton receive an 1,800 calorie diabetic diet with a diabetic snack. (ECF 25-3 at 1.) On November 5, 2020, Mr. Stanton requested to be restored to a normal diet, and Dr. Liaw approved the change. (ECF 25-1 ¶ 9; ECF 25-2 at 1-4.) On November 24, 2020, Dr. Liaw noted that Mr. Stanton's diabetes was "improving," and

---

[1] Medical records reflect that he has also been diagnosed with antisocial personality disorder. (ECF 25-2 at 7.)

his A1C[2] had improved from 9.7 percent to 8.7 in recent months. (ECF 25-2 at 6.) Dr. Liaw noted that Mr. Stanton asked to be placed back on the diabetic diet because he did not like how early the regular breakfast trays arrived. Specifically, Dr. Liaw noted Mr. Stanton's concern that "because if he is on a 'regular diet,' he reports his AM meals [are] arriving 4-5 am, but if he is on the [diabetic diet], it arrives closer to 6 am." (*Id*.) Dr. Liaw declined to alter Mr. Stanton's diet for this reason, particularly since he had just changed diets a few weeks earlier. (*Id*. at 5.) Dr. Liaw also noted that Mr. Stanton had engaged in "multiple hunger strikes . . . in the past few months." (*Id*. at 7.) Dr. Liaw concluded that "we will not make any changes to his diet for a period of 90 days since his last diet change," and that "[u]nless there is a clear medical indication," there would be no further diet changes. (*Id*. at 5.)

Following this visit, Mr. Stanton began refusing blood sugar checks, insulin, and his other medications. (*Id*. at 12-18.) On November 26, 2020, the nurse noted that he was refusing his blood sugar check and insulin against medical advice. (*Id*. at 12.) The same thing occurred on November 29, 2020. (*Id*. at 14.) On November 30, 2020, during morning medication rounds he again refused a blood sugar check and his insulin, and the nurse noted that he said he would "continue to refuse medical care until all his complaints are addressed properly." (*Id*. at 16.) He was seen around 6:00 p.m. that same day by nursing staff and allowed his blood sugar level to be taken. (*Id*. at 18.) The level

---

[2] An A1C test "measures your average blood glucose, or blood sugar, level over the past 3 months." A1C tests are used both to diagnose diabetes and to see how well the condition is being managed. An A1C below 5.7 percent is considered normal. *See* https://medlineplus.gov/a1c.html (last visited April 29, 2021).

registered as high, and the nurse "explained how serious that is and . . . the damage that could be done." (*Id.* at 19.) However, Mr. Stanton still refused his insulin and other medications. (*Id.*) On December 1, 2020, he went to the nurse and asked that his blood sugar be checked. (*Id.* at 20.) It was checked and again registered as high, but Mr. Stanton still refused his insulin. (*Id.* at 21.)

During this same period, Mr. Stanton also complained to Dr. Liaw about being served soy. Dr. Liaw's notes reflect that on September 29, 2020, Mr. Stanton told him he "has no issues with soybean oil . . . but does not tolerate the pasta with meat sauce because it has a 'soy meat byproduct' in it." (ECF 25-1 ¶ 7; ECF 25-3 at 6.) He reported that he had no food issues prior to his incarceration. (*Id.*) He claimed that eating the soy meat byproduct in the pasta dish had caused a large "knot" to grow in his abdomen and other gastrointestinal symptoms.[3] (ECF 25-3 at 6.) Mr. Stanton asked about being put on a renal diet because it would not contain soy, but the doctor explained to him that this diet was reserved for inmates with renal abnormalities. (*Id.*)

Over multiple appointments, Dr. Liaw evaluated Mr. Stanton's complaints of abdominal pain. He noted that Mr. Stanton reported abdominal pain prior to September 18, 2020, which reportedly resolved after he stopped eating the soy byproduct he objected to. (ECF 25-3 at 6.) After several examinations, Dr. Liaw and the medical staff found no visible or palpable mass on Mr. Stanton's abdomen. (*See* ECF 25-2 at 7.) Dr. Liaw noted that Mr. Stanton's weight had been fluctuating, which he found consistent

---

[3] Mr. Stanton has a separate case pending regarding the lack of treatment for the alleged knot in his abdomen. *See Stanton v. Liaw*, No. 3:21-cv-89-JD-MGG (N.D. Ind. filed Feb. 8, 2021.)

with Mr. Stanton's "selective eating" and the fact that he had gone on multiple hunger strikes in recent months. (ECF 25-3 at 6, 8; ECF 25-2 at 7-9.) Because Mr. Stanton reported that he tolerates soybean oil and other foods with soy in them, Dr. Liaw concluded that he was not allergic to soy, and that testing for a soy allergy was not needed. (ECF 25-3 at 6.) Dr. Liaw told Mr. Stanton that if he could not tolerate a particular food, he should avoid it.[4] (*Id*.) However, in the doctor's view, no change in diet was necessary based on the concerns Mr. Stanton was raising about soy. (*Id*.)

On January 5, 2021, Dr. Liaw saw Mr. Stanton for a chronic care visit and he again requested to be placed on the diabetic diet. (ECF 25-2 at 25.) Noting that Mr. Stanton's diabetes was "not under control," Dr. Liaw granted the request. (*Id*. at 24-25.) The order for an 1,800 calorie diabetic diet and a diabetic snack remains in effect through July 5, 2021. (*Id*. at 24.)

On February 3, 2021, Mr. Stanton was seen by a nurse. (*Id*. at 30.) He again refused to take his insulin. (*Id*.) He told the nurse that he had not eaten lunch or dinner that day because "he received the wrong beverage with his meals." (*Id*.) The nurse encouraged him to eat and notified Dr. Liaw of what had occurred. (*Id*.)

Based on the record, Mr. Stanton has not sustained his burden of demonstrating that he has a reasonable likelihood of success on the merits of his claim that he is receiving a constitutionally inadequate diet, or that he will suffer irreparable injury if a preliminary injunction is not granted. Medical records reflect that it was Mr. Stanton

---

[4] Dr. Liaw attests that medical staff have no control over the particular menu items that are served to inmates. (ECF 25-1 ¶ 13.)

who requested to be taken off the diabetic diet, and that he has flip-flopped several times in his diet requests. (ECF 25-2 at 2, 6, 7, 25.) On one occasion, he requested a particular diet for convenience rather than medical reasons. (*Id.* at 6.) He has also refused on several occasions to have his blood sugar checked and refused to take his insulin, despite being advised that he is putting himself in danger by doing so. (*Id.* at 12-21.) He cannot be permitted to "engineer an Eighth Amendment violation." *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). Records also reflect that at present, he is being served the diabetic diet and that his diabetes is being regularly monitored by medical staff. (ECF 25-2 at 24-25.) He has not shown an entitlement to an order requiring further changes to his diet while this case is pending.

For these reasons, the motion for a preliminary injunction (ECF 12) is DENIED.

SO ORDERED on May 3, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT