UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHRISTOPHER A. STANTON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-666-JD-MGG |
| DR. LIAW, et al., | |
| Defendants. | |

OPINION AND ORDER

Christopher A. Stanton, a prisoner proceeding without a lawyer, was granted leave to proceed on an Eighth Amendment claim against prison physician Dr. Andrew Liaw for monetary damages for failing to provide him with a proper diet to manage his diabetes.[1] (ECF 11.) He was also granted leave to proceed on a claim for permanent injunctive relief against John Galipeau, the Warden of Westville Correctional Facility, in his official capacity related to his need for a medically appropriate diet. (*Id.*)

Dr. Liaw and the Warden separately move for summary judgment. (ECF 43, 73.) They argue that the evidence shows that Dr. Liaw has not been deliberately indifferent to Mr. Stanton's need for a proper diet to manage his diabetes and that he is receiving a proper diet. (ECF 44, 74.) Mr. Stanton has filed responses to the motions (ECF 47, 78), and Defendants have replied thereto. (ECF 49, 79.) The matter is now ripe for adjudication.

---

[1] The court dismissed a number of his other claims at screening, including a claim that the Eighth Amendment entitles him to a diet free of soy. (*See* ECF 11.)

Under Federal Rule of Civil Procedure 56, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (citation omitted). In deciding whether a genuine dispute of fact exists, the court must "consider all of the evidence in the record in the light most favorable to the non-moving party, and . . . draw all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citation omitted). At the summary judgment stage, the court cannot "weigh conflicting evidence" or "make credibility determinations," as this is "the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (citations omitted). Instead, the court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

The undisputed facts show that Mr. Stanton is 43 years old and has been in the custody of the Indiana Department of Correction ("IDOC") since 2015. (ECF 44-4 at 7, 9.) He has been at Westville Correctional Facility ("Westville") since November 2020. (*Id.* at 10.) He has a high school diploma and has completed some college course work, but has no medical training. (*Id.* at 7.) During the time he has been at Westville, he has held jobs in the kitchen. (*Id.* at 10-12.)

Mr. Stanton has been diagnosed with and takes medication for several chronic conditions, including diabetes, post-traumatic stress disorder, migraines, and night

2

terrors.[2] (ECF 44-4 at 9.) He is under the care of doctors for these conditions, and is seen for regular chronic care visits by Dr. Liaw. (*Id.*; ECF 44-3 at 1-33.) He sees other medical staff daily when they give him his medications, including his insulin. (ECF 44-4 at 11.)

On June 5, 2020, Dr. Liaw ordered that Mr. Stanton receive an 1,800 calorie diabetic diet with a diabetic snack. (ECF 44-3 at 1.) During a chronic care visit on June 30, 2020, Mr. Stanton notified Dr. Liaw that Aramark, the company that provides food at the prison, was "having a difficult time providing the appropriate diabetic diet, despite having an appropriate diet order." (*Id.* at 2.) Mr. Stanton testified at his deposition that during this period he was not always getting diabetic trays because certain members of the custody staff told Aramark workers that he was not on a diabetic diet. (ECF 44-4 at 16.) He testified that it was "a 50/50 chance" as to whether he would receive the diabetic tray on a certain date, and that it "depended on the Aramark worker that was working." (*Id.* at 17.) When he alerted Dr. Liaw to this issue, the doctor told him that he would reorder the diabetic diet so he would hopefully get the correct trays. (*Id.*) Dr. Liaw does not have control over the implementation of diet orders or the delivery of meals to inmates, as these issues are handled by Aramark. (ECF 44-2 ¶ 15.) Dr. Liaw noted at that visit that Mr. Stanton's A1C[3] had gone from 6.2, which was "at target," to 9.7 in recent months. (ECF 44-3 at 2.)

---

[2] He has also been diagnosed with a personality disorder and has a history of substance abuse. (ECF 44-3 at 13; ECF 44-4 at 18.)

[3] An A1C test "measures your average blood glucose, or blood sugar, level over the past 3 months." A1C tests are used both to diagnose diabetes and to see how well the condition is being managed. An A1C below 5.7 percent is considered normal. *See* https://medlineplus.gov/a1c.html.

On September 29, 2020, Mr. Stanton was seen by Dr. Liaw for another chronic care visit. (ECF 44-3 at 12.) At that time, Mr. Stanton asked to be put on a "soy free" diet. (*Id.*) He reported that he was not allergic to soy and had no issues with soy prior to his incarceration, but reported that he "has issues with 'soy meat byproduct' that he has seen in the kitchen." (*Id.*) He claimed that the soy meat byproduct caused him abdominal pain, which had resolved since he stopped eating these foods. (*Id.*) He asked to be put on a "renal diet" because he believed it would not have foods containing soy. (*Id.*) Dr. Liaw explained to him that the renal diet was for inmates with renal abnormalities, which Mr. Stanton did not have. (*Id.*) Dr. Liaw determined that there would be no change in Mr. Stanton's diet at that time, and counseled him to avoid foods to which he felt he was intolerant. (*Id.*) Dr. Liaw noted Mr. Stanton's weight was "his highest in the last 2 months," and that he had gained nine pounds in the past month despite his reports of "selective eating" due to his desire to avoid foods with soy meat byproducts. (*Id.*) He informed Mr. Stanton that he could request a vegetarian diet if he desired it, and told him that the appropriate forms could be obtained from religious personnel at the facility. (*Id.*) Mr. Stanton testified at his deposition that he is not allergic to soy but felt that a renal diet would be "better healthier wise." (ECF 44-4 at 18, 19.)

On November 5, 2020, Dr. Liaw was told by Nurse Smith (a non-party) that Mr. Stanton wanted to receive a regular diet with a diabetic snack, and Dr. Liaw approved this request. (ECF 44-3 at 16-19.) Mr. Stanton disputes that he ever told Nurse Smith he

4

wanted to receive a regular diet, although he acknowledges that Nurse Smith conveyed this information to Dr. Liaw.[4] (ECF 44-4 at 21-22.)

On November 24, 2020, Dr. Liaw saw Mr. Stanton for another chronic care visit. (ECF 44-3 at 21.) The doctor noted that Mr. Stanton's diabetes was "improving," and that his A1C had decreased from 9.7 percent to 8.7 in recent months. (*Id.*) Dr. Liaw noted that Mr. Stanton said he "wants back" on the diabetic diet; he explained to the doctor that if he receives the regular diet, his breakfast trays arrive between 4 and 5 a.m., whereas if he receives the diabetic diet, his breakfast trays arrive closer to 6 a.m. (*Id.*) Dr. Liaw determined that no changes would be made for 90 days in light of the recent diet change made in the beginning of November. (*Id.* at 20.) Dr. Liaw also noted that Mr. Stanton had engaged in "multiple hunger strikes . . . in the past few months," but had gained six pounds since his weight was last checked 30 days earlier. (*Id.* at 22; *see also* ECF 44-4 at 20 ("I've went on numerous hunger strikes") and 24 ("I had to starve myself a few times")). Dr. Liaw concluded that further diet changes would not be made "[u]nless there is a clear medical indication." (ECF 44-3 at 20.)

At the end of November 2020, Mr. Stanton engaged in another hunger strike. (ECF 44-4 at 25.) Over the course of several days, he refused blood sugar checks and insulin. (ECF 44-3 at 27-33.) On November 29, 2020, he refused a blood sugar check and

---

[4] Mr. Stanton acknowledged at his deposition having had several discussions with Nurse Smith about his diet, and it is unclear from the record whether she misunderstood his desires or took it upon herself to have his diet changed. (*See* ECF 44-4 at 14.) Mr. Stanton was in disciplinary segregation when this occurred, and his response to one of the motions suggests that there was some issue related to the provision of insulin to diabetic inmates in the segregation unit prior to their receipt of breakfast trays. (*See* ECF 78 at 2.)

insulin, and he reported that he would continue to refuse medical care "until all [his] issues are addressed fully and properly."[5] (*Id.* at 31.) On November 30, 2020, he allowed his glucose level to be taken. (*Id.* at 29.) The level registered as high but he still refused his insulin. (*Id.*) On December 1, 2020, he allowed his glucose level to be checked. (*Id.* at 27.) It again registered as high, but he still refused to take his insulin. (*Id.*)

On January 5, 2021, Dr. Liaw saw Mr. Stanton for a chronic care visit and he again requested to be placed on the diabetic diet. (ECF 44-3 at 7.) Concluding that Mr. Stanton's blood tests showed his diabetes was "not under control," Dr. Liaw granted the request. (*Id.*) He ordered that Mr. Stanton receive an 1,800 calorie diabetic diet and a diabetic snack. (*Id.*) The doctor renewed the diabetic diet order in June 2021 and December 2021. (ECF 44-2 ¶ 13; ECF 44-4 at 27.)

On February 14, 2022, Mr. Stanton was seen by Dr. Liaw for another chronic care visit. (ECF 70-1; ECF 70-3 at 1-3.) Those records reflect that his eating habits have continued to fluctuate. He previously reported to Dr. Liaw that he "snacks a lot" while working at his job in the cafeteria. (*Id.* at 1, 83.) As of February 2022, however, he had left the cafeteria job and reported to Dr. Liaw that he felt he wasn't eating enough at night. (*Id.* at 1.) He had also on occasion refused to eat his meals and missed doses of insulin.[6] (*Id.* at 64, 100.)

---

[5] He described "just a few" of the issues he wanted resolved as follows: "The mass on my abdomen, my diet trays, the black mold in my toilet, [and] my neighbor telling me to kill myself[.]" (ECF 44-3 at 31.)

[6] In one instance, he reportedly told the nurse that he had not eaten lunch or dinner that day because "he received the wrong beverage with his meals." (ECF 70-3 at 277.)

For a brief period, Mr. Stanton had some difficulty getting his diabetic trays as ordered by Dr. Liaw, but two of the nurses spoke to custody staff and the issue was resolved. (ECF 44-4 at 27.) Mr. Stanton's current diabetic diet card remains in effect through June 2022. (ECF 70-2.) In Dr. Liaw's professional opinion, this is the proper diet to address Mr. Stanton's diabetes. (ECF 44-2 ¶ 12.)

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (citation omitted). However, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. "[M]ere disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019) (citation and internal quotation marks omitted). Instead, the court must "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). That deference extends to a medical professional's judgment that a patient is malingering. *See Fitzgerald v. Greer*, 324 F. App'x 510, 515 (7th Cir. 2009); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428–29 (7th Cir. 1991). Additionally, it is not enough that a medical professional be mistaken in his judgment, as "negligence, gross negligence, or even

7

recklessness as the term is used in tort cases is not enough" to establish an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). To prevail, the inmate must show deliberate indifference, which is "a culpability standard akin to criminal recklessness." *Thomas*, 2 F.4th at 722.

There is no question that Mr. Stanton's diabetes is a serious medical condition; left untreated, it can lead to kidney disease, stroke, or even a fatal coma. *Miller v. Lemke*, 711 F. App'x 354, 355 (7th Cir. 2018). However, he has not come forward with evidence from which a reasonable jury could conclude that Dr. Liaw has been deliberately indifferent to his need for a diet to help manage his diabetes. To the contrary, the medical records reflect that Dr. Liaw has carefully monitored Mr. Stanton's diabetes, sought input from him about his current eating habits and symptoms, and changed his medication and diet when he felt it was medically warranted. *Cesal v. Kruse*, 858 F. App'x 919, 920 (7th Cir. 2021) (no deliberate indifference to inmate's diabetes where medical staff "continually monitored his blood sugar, and they adjusted his medicine in response to his symptoms"); *Radunz v. Muhlhausen*, 375 F. App'x 618, 620 (7th Cir. 2010) (no deliberate indifference to inmate's diabetes where he "received regular medication, blood-sugar checks, and a special diet in response to his diabetes"). Records reflect that he is currently receiving a diabetic diet, which in Dr. Liaw's professional opinion is a medically appropriate diet for his condition.

Nevertheless, Mr. Stanton argues that summary judgment cannot be granted because he never told Nurse Smith that he wanted to receive regular food trays. (ECF 78 at 2-3; ECF 47 at 1.) However, he acknowledged at his deposition that Nurse Smith told

8

Dr. Liaw that he made this request. (ECF 44-4 at 22.) It is also evident that when Dr. Liaw saw Mr. Stanton a few weeks after the diet change was made, he considered Mr. Stanton's recent blood tests and determined that the regular diet would be medically appropriate as Mr. Stanton's diabetes was "improving" at that time. (ECF 44-3 at 21.) Dr. Liaw revisited this issue several times, and when Mr. Stanton's diabetes appeared to be getting worse, the doctor reordered the diabetic trays. (ECF 44-3 at 7.) At most, the record shows that there was a brief period wherein Mr. Stanton was not receiving diabetic trays due to Dr. Liaw's belief—mistaken or otherwise—that Mr. Stanton had requested a diet change, and the fact that his diabetes appeared to be improving at that time. There have been other sporadic instances where Mr. Stanton did not get his diabetic trays due to issues with custody staff and/or Aramark workers, but Dr. Liaw has no control over the delivery of food trays to inmates. (ECF 44-2 ¶ 15.) `

Because Mr. Stanton is the non-movant, the court must construe all facts and draw all reasonable inferences in his favor. *Ogden*, 606 F.3d 358. However, his own disagreement with Dr. Liaw's diet orders cannot establish a constitutional violation. *See Lloyd v. Moats*, 721 F. App'x 490, 494–95 (7th Cir. 2017) ("[Plaintiff's] disagreement is irrelevant. He is not competent to diagnose himself, and he has no right to choose his own treatment."). Nor can he "engineer an Eighth Amendment violation" by failing to take his insulin, skipping meals, or going on hunger strikes and then blaming Dr. Liaw for the consequences. *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). The court must defer to the treatment decisions of prison medical providers unless no minimally competent professional would have responded as they did. *Walker*, 940 F.3d at 965. No

9

reasonable jury could conclude that Dr. Liaw knowingly disregarded a substantial risk of serious harm to Mr. Stanton, or that his treatment decisions have been beyond the scope of reasonable professional judgment. Therefore, Defendants are entitled to summary judgment.

For these reasons, the motions for summary judgment (ECF 43, 73) are GRANTED, and judgment is ENTERED in favor of Defendants. The clerk is DIRECTED to close this case.

SO ORDERED on May 24, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT